IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANTHANETTE MARSHBANKS, as Special Administrator of the Estate of Archie Lee Chambers, Jr., )<br><br>Plaintiff, )<br><br>v. )<br><br>CITY OF CALUMET CITY; OFFICER LUCIOUS, STAR NO. 230, OFFICER GERSTNER, STAR NO. 188, OFFICER FISHER, STAR NO. 168, OFFICER LASTER, STAR NO. 206, OFFICER T. MOTTL, STAR NO. 214, OFFICER HINTZ, STAR NO. 148, LT. DIFIORI, STAR NO. 150, OFFICER BLAND, STAR NO. 234, CHIEF EDWARD GILMORE, Star no. 227 and UNKNOWN OFFICERS, )<br><br>Defendants. ) | No. 13 C 2978 |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

On April 19, 2013, Plaintiff Anthanette Marshbanks filed a ten-count Complaint against Defendants City of Calumet City (the "City"), and numerous officers, including Lieutenant DiFiori and Chief Edward Gilmore, (collectively, the "Defendants"). (R. 1, Compl.) The Complaint alleges the following: Count I – excessive force against all Defendants; Count II – a *Monell* claim against the City; Count III – conspiracy against all Defendants; Count IV – failure to intervene against all Defendants; Count V – failure to supervise against Chief Gilmore and Lt. Difiori; Count VI – intentional infliction of emotional distress against all Defendants; Count VII – wrongful death against all Defendants; Count VIII – violation of the Survival Act against all

1

Defendants; Count IX – *respondeat* superior against the City; Count X – indemnification. The City, Lieutenant Difori, and Chief Gilmore (collectively, the "Moving Defendants") moved to dismiss Ms. Marshbanks' Complaint, except for Counts IX and X, pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6), and to strike certain immaterial, impertinent, and redundant allegations pursuant to Rule 12(f). (R. 17, Mot.) Defendants Bland, Fisher, Gerstner, Hintz, Laster, Lucious, and Mottl joined in and adopted the Moving Defendants' motion to dismiss. (R. 20, 22.)

## BACKGROUND

Ms. Marshbanks alleges the following facts which the Court deems true for purposes of this motion.

On or about April 21, 2012, one of more Calumet City police officers shot and killed Archie Chambers, Jr., Ms. Marshbank's son. (Compl. ¶¶ 2, 5.) Mr. Chambers was attending a car show at What's Up Bar and Grill that evening. (*Id*. ¶ 8.) While at the bar, someone – not Mr. Chambers – shot his friend, Willie Randall White, Jr. in the parking lot. (*Id.* ¶¶ 9-11.) After the shooting, Mr. Chambers attempted to leave the parking lot by jumping a fence. (*Id*. ¶ 14.) Officers who arrived on the scene, and who had no information implicating Mr. Chambers, began shooting at Mr. Chambers when he was at the top of the fence. (*Id*. ¶ 15.) Three shots hit Mr. Chambers, resulting in his death. (*Id*. ¶¶ 16, 20.) There was no gun or other weapon recovered from Mr. Chambers' body. (*Id*. ¶ 19.) Officers, other than those who discharged their weapons, completed a police report of the incident. (*Id*. ¶ 24.) The Calumet Chief of Police did not discipline any officer in connection with Mr. Chambers' death. (*Id.*)

Calumet City police officers were involved in another shooting incident in early 2012, months before Mr. Chambers' death. (Compl. ¶¶ 25-30.) In that incident, officers shot a fifteen-

year-old autistic boy, Stephon Watts, twice, including a shot to the head. (*Id*. ¶¶ 27-28.) Ms. Marshbanks believes that the Chief of the Police Department failed to discipline any officer, or send any officer to remedial training, after that incident. (*Id*. ¶¶ 29-30.)

## LEGAL STANDARD

### I.  Motion to Dismiss Pursuant to Rule 12(b)(6)

"A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff,* 696 F.3d 635, 637 (7th Cir. 2012). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (citation omitted). Under the federal notice pleading standards, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Twombly,* 550 U.S. at 570). "In evaluating the sufficiency of the complaint, [courts] view it in the light most favorable to the plaintiff, taking as true all well-pleaded factual allegations and making all possible inferences from the allegations in the plaintiff's favor." *AnchorBank, FSB v. Hofer,* 649 F.3d 610, 614 (7th Cir. 2011).

### II.  Motion to Strike Pursuant to Rule 12(f)

"Rule 12(f) provides that a district court 'may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.'" *Delta Consulting Grp., Inc. v. R. Randle Const., Inc*., 554 F.3d 1133, 1141 (7th Cir. 2009) (quoting Fed. R. Civ. P.

12(f)).  Motions to strike are appropriate if they serve to expedite litigation.  *See Heller Fin., Inc. v. Midwhey Powder*, 883 F.2d 1286, 1294 (7th Cir. 1989); *see also Talbot v. Robert Matthews Distrib. Co.*, 961 F.2d 654, 664 (7th Cir. 1992) (allegations may be stricken if matter bears no possible relation to controversy).  District courts have considerable discretion to strike allegations under Rule 12(f).  *See Delta,* 554 F.3d at 1141–42.

## ANALYSIS

Defendants move to dismiss Ms. Marshbanks' Complaint, except for Counts IX and X, and strike her punitive damages claim, paragraph 77, and portions of paragraph 70.  The Court addresses each argument in turn.

**I.     Count II – *Monell* Claim**

In Count II, Ms. Marshbanks asserts a *Monell* claims against the City alleging that "the unreasonable use of lethal force was proximately caused by the policies and practices of the City of Calumet's Police Department."  (Compl. ¶ 37.)  *See Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).  As the Seventh Circuit teaches, "*Monell* recognized that the premise behind a § 1983 action against a government body is the allegation that official policy is responsible for the deprivation of rights."  *Thomas v. Cook Cnty. Sheriff's Dep't,* 604 F.3d 293, 306 (7th Cir. 2010) (citation omitted) (emphasis in original); *see also Milestone v. City of Monroe, Wis.*, 665 F.3d 774, 780 (7th Cir. 2011)) ("There is no respondeat superior liability under § 1983; the Supreme Court 'distinguish[es] acts of the *municipality* from acts of *employees* of the municipality.'") (citation omitted) (emphasis in original).  To establish liability against the City on a *Monell* claim, Ms. Marshbanks must show that: (1) Mr. Chambers suffered a deprivation of a constitutional right, (2) as a result of either an express municipal policy, widespread custom, or deliberate act of a decision-maker with final

policymaking authority, that (3) proximately caused their constitutional injuries. *See Ovadal v. City of Madison*, 416 F.3d 531, 535 (7th Cir. 2005); *see also Obrycka v. City of Chi.*, No. 07 C 2372, 2012 WL 601810, at * 6 (N.D. Ill. Feb. 23, 2010).

Defendants contend that Ms. Marshbanks has not sufficiently pled a *Monell* claim because she has pled mere conclusory allegations supported by only one other prior shooting. (Mem. at 4-5.) The Court disagrees. Ms. Marshbanks has alleged that "widespread practices are allowed to flourish because the City directly encourages and is thereby the moving force behind the very type of misconduct at issue by failing to adequately train, supervise, and control its officers and by failing to adequately punish and discipline prior instances of similar misconduct, thus directly encouraging future abuses such as those affecting Plaintiff." (Compl. ¶ 38.) Notably, Ms. Marshbanks did not simply allege the existence of a practice, she offered a specific example of another similar incident which occurred prior to officers shooting Mr. Chambers, and which did not result in any training or discipline for the officers involved. Specifically, Ms. Marshbanks alleges that officers shot and killed Stephon Watts "only months before" officers killed Mr. Chambers. (*Id*. ¶¶ 25-30.) According to Ms. Marshbanks, the City failed to discipline or train the officers as a result of the Watts shooting, thus furthering this conduct. (*Id.* ¶¶ 29-30.) Ms. Marshbanks also alleges that the City "exhibited deliberate indifference to the problem," thereby allowing it "to exist and thrive." (*Id.* ¶ 39.) Viewing the facts in the light most favorable to Ms. Marshbanks, and making all reasonable inferences in her favor, these allegations pass the plausibility test imposed by *Iqbal* and *Twombly* for a *Monell* claim of failure to train, supervise, or control. *See, e.g., Connick v. Thompson,* 131 S. Ct. 1350, 1360, 179 L. Ed. 2d 417 (2011); *City of Canton v. Harris,* 489 U.S. 378, 387, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989).

**II.     Count III – Conspiracy**

In Count III, Ms. Marshbanks alleges that all the Defendants conspired to protect one another from liability for Mr. Chambers death.  Specifically, she alleges that they reached an agreement and took certain overt steps, such as creating false reports of the shooting or failing to prepare reports related to the shooting. (Compl. ¶¶ 42-45.)   According to Ms. Marshbanks, "[a]s a direct and proximate result of the illicit prior agreement [], [Mr. Chambers'] rights were violated and he suffered injuries." (*Id*. ¶ 47.)  Defendants contend that the intra-corporate conspiracy doctrine bars Ms. Marshbanks' conspiracy claim.

The intra-corporate conspiracy doctrine precludes conspiracy claims against members of the same entity acting within the scope of their authority. *Payton v. Rush-Presbyterian-St. Luke's Med. Ctr*., 184 F.3d 623, 632-33 (7th Cir. 1999); *Wright v. Illinois Dept. of Children & Family Servs*., 40 F.3d 1492, 1508 (7th Cir. 1994) (applying the intra-corporate conspiracy doctrine to public entities); *Allen v. City of Chicago*, 828 F. Supp. 543, 564 (N.D. Ill. 1993) (applying the intra-corporate conspiracy doctrine to municipal corporations). "The policy behind the doctrine is to preserve independent decision-making by business entities and their agents free of the pressure that can be generated by allegations of conspiracy." *Tabor v. City of Chicago*, 10 F. Supp. 2d 988, 994 (N.D. Ill. 1998).

Although the Seventh Circuit has explicitly recognized this doctrine regarding Section 1985 conspiracy claims, *Travis v. Gary Comm. Mental Health Cntr., Inc.,* 921 F.2d 108, 109-11 (7th Cir. 1990), it has not addressed the issue of whether the doctrine applies to Section 1983 conspiracy claims, "and district courts in this Circuit are split on whether it does." *Drager v. Village of Bellwood*, No. 12 C 9569, 2013 WL 4501413,  at *10 (N.D. Ill. Aug. 22, 2013); *Doe v. Board of Educ. of Hononegah Community High School Dist. No. 207*, 833 F. Supp. 1366,

1382 (N.D. Ill. 1993); *Cromley v. Board of Ed. of Lockport Township High School Dist. 205*, 699 F. Supp. 1283, 1291-92 (N.D. Ill. 1988). The Seventh Circuit also has allowed plaintiffs to pursue Section 1983 conspiracy claims where all of the alleged conspirators were police officers working for the same entity. *See, e.g., Geinosky v. City of Chicago*, 675 F.3d 743 (7th Cir. 2012).

The Court need not determine whether the intra-corporate conspiracy doctrine applies to Section 1983 conspiracy claims because Ms. Marshbanks has failed to sufficiently state a claim for conspiracy. To establish Section 1983 liability through a conspiracy theory, a plaintiff must demonstrate that: (1) individuals reached an understanding to deprive the plaintiff of his constitutional rights, and (2) those individual were willful participants in joint activity. *See Lewis v. Mills*, 677 F.3d 324, 333 (7th Cir. 2012). Ms. Marshbanks, however, offers only conclusory allegations that all of the officers involved reached an agreement. (Compl. ¶ 44.) This is not a circumstance where conclusory allegations are sufficient, such as where a court can conclude that the conduct would have not occurred outside of a conspiracy. *Contra Geinosky*, 675 F.3d at 749. Ms. Marsbhanks also does not offer specific allegations against any officer, but instead states that the officers either conspired to create false reports of the shooting *and/or* did not prepare any reports. (*Id.* ¶ 46.) These allegations do not sufficiently put Defendants on notice of the claims they face. She also has not alleged any particular constitutional right of which the officers deprived Mr. Chambers. This is particularly troubling because the allegedly conspiratorial conduct occurred after officers shot Mr. Chambers. Indeed, participation in a constitutional deprivation is a prerequisite for individual liability under Section 1983. *See Pepper v. Vill. of Oak Park*, 430 F.3d 805, 810 (7th Cir. 2005). The Court, therefore, dismisses Count III without prejudice.

### III.  Count V – Failure to Supervise

In Count V, Ms. Marshbanks alleges that Chief Gilmore and Lt. DiFiori failed to supervise and control the officers, which resulted in Mr. Chambers' death. The Defendants argue that it is unclear whether Ms. Marshbanks asserts Count V against Chief Gilmore and Lt. DiFiori in their official capacities or individual capacities. (Mem. at 8.) If Ms. Marshbanks asserts Count V against these two officers in their official capacities, the claim is redundant as the City of Calumet is a named defendant. *See, e.g., Sow v. Fortville Police Dep't*, 636 F.3d 293, 300 (7th Cir. 2011) ("an official capacity suit is another way of pleading an action against an entity of which the officer is an agent.") (citing *Kentucky v. Graham*, 473 U.S. 159, 165-66, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985); *Monell*, 436 U.S. at 690 n. 55.)

According to Ms. Marshbanks, she asserts Count V under so-called "supervisory liability." (Resp. at 7-8.) "Section 1983 does not authorize 'supervisory liability'." *Vining-El v. Evans*, 657 F.3d 591, 592 (7th Cir. 2011). For a supervisor to be liable under Section 1983, the plaintiff must show that that the defendant-supervisor is "personally responsible for the deprivation of the constitutional right." *Matthews v. City of East St. Louis*, 675 F.3d 703, 708 (7th Cir. 2012) (citing *Chavez v. Illinois State Police*, 251 F.3d 612, 651 (7th Cir. 2001)); *see also Paine v. Cason*, 678 F.3d 500, 512 (7th Cir. 2012) (noting that a defendant officer could only "be liable for what he did; there is no doctrine of supervisory liability for the errors of subordinates"). "To show personal involvement, the supervisor must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." *Id.* (quotation omitted); *see also T.E. v. Grindle*, 599 F.3d 583, 588 (7th Cir. 2010) (quotations omitted). Ms. Marshbanks has not alleged that either Chief Gilmore or Lt. DiFiori had any "personal involvement" in the shooting. Ms. Marshbanks merely alleges that these officers

"exhibited a deliberate indifference . . . to the unconstitutional practices of Defendants, thereby effectively ratifying it." (Compl. ¶ 57.) Indeed, she has not even stated any facts indicating that either Chief Gilmore or Lt. DiFiori were personally aware of or supervised officers involved with Stephon Watts, which seems to be the action to which these officers allegedly turned a blind eye or tacitly approved. Additionally, it is unclear to what specific "unconstitutional practices" Ms. Marshbanks refers, as she includes no factual allegations in Count V to support this statement. Even viewing the facts in the light most favorable to Ms. Marshbanks, she has not provided sufficient notice to Defendants of this claim. The Court, therefore, dismisses Count V without prejudice.

**IV.    Count I – Excessive Force – and Count IV – Failure to Intervene**

Defendants claim that Counts I and IV are unclear as to Chief Gilmore and Lt. DiFiori because Ms. Marshbanks' allegations refer to all named defendants collectively as "Defendants" rather than specifying conduct by any particular officers. Specifically, Ms. Marshbanks alleges that "Defendants" shot Mr. Chambers, yet also asserts a failure to supervise claim against Chief Gilmore or Lt. DiFiori, indicating that they did not shoot Mr. Chambers. (Mem. at 10.) As noted by the Defendants, the City also could not have shot Mr. Chambers, though the City would be included in Ms. Marshbanks general use of the term "all Defendants." (*Id*.) Rather than disputing the Defendants' argument, Ms. Marshbanks seeks "leave to file an Amended Complaint to clarify the applicability of certain Counts to specific Defendants." (R. 27, Reply at 8.) The Court, therefore, dismisses Counts I and IV against the City, Chief Gilmore and Lt. DiFiori, without prejudice, and grants Ms. Marshbanks leave to amend.

## V.     Counts VI, VII, and VIII – Substantive State Law Claims

Defendants argue that Counts VI (intentional infliction of emotional distress), VII (wrongful death), and VIII (survival) are similarly confusing and insufficiently pled because Ms. Marshbanks alleges them against "all Defendants," which includes the City who cannot be directly liable for state law claims. (Mem. at 11.) Furthermore, she asserts claims against the City under a theory of *respondeat superior* in Count IX, which therefore, makes Counts VI, VII, and VIII against the City redundant. (*Id.*) The Court agrees.

Additionally, because Ms. Marshbanks' allegations against Chief Gilmore and Lt. DiFiori seem to relate to their failure to discipline officers after Ms. Chambers was shot rather than any direct role in the shooting, she has not asserted a claim of intentional infliction of emotional distress, wrongful death, or under the Survival Act against them. Significantly, Ms. Marshbanks does not attempt to refute the Defendants' arguments but instead seeks to amend her Complaint to address these issues. (Resp. at 9.) The Court, therefore, dismisses Counts VI, VII, and VIII without prejudice.

Additionally, Defendants move to strike paragraph 70 of Count VII (wrongful death) which alleges:

> As detailed above, Defendants, acting by and through its duly authorized agents, breached this duty by willfully and wantonly committing one or more of the following acts and/or omissions:
>
> > a. Fatally shooting Decedent without lawful justification,
> > b. Discharged their weapon in a crowded area without legal justification to do so.
> > c. Willfully and wantonly shot Decedent which led to his death.
> > d. Willfully and wantonly destroyed, changed, or altered evidence in an attempt to cover-up the improper conduct leading to Decedent's death.

According to Defendants, the allegations in subparagraphs (b) and (d) are immaterial and impertinent because neither of these allegations relate to the reasons why Mr. Chambers died.

10

(Mem. at 13.) Defendants contend that the Court should strike these subparagraphs as they are prejudicial and only serve to confuse the relevant issues. (*Id*.) Ms. Marshbanks contends that they show that Defendants acted with an utter disregard for the safety of others and breached their duty to exercise due care. (Resp. at 8-9.) Because motions to strike are generally disfavored, *Williams v. Jader Fuel Co*., 944 F.2d 1388, 1405-06 (7th Cir. 1991), and Defendants have not met their burden of showing that the allegations are "so unrelated to plaintiff's claim as to be devoid of merit, unworthy of consideration, and unduly prejudicial," the Court denies Defendants' request to strike these allegations. *E & J Gallo Winery v. Morand Bros. Beverage Co*., 247 F. Supp. 2d 979, 982 (N.D. Ill. 2003).

## VI.     Paragraph 77 of Count II – Survival Act

The Defendants argue that the Court should strike paragraph 77 because the Survival Act does not provide the remedies sought in that paragraph, namely remedies for Mr. Chambers' next of kin's injuries. (Mem. at 15); *see Hall v. United Sec*., No. 1–11–2158, 2012 WL 6962880, at *2 (Ill. App. Ct. Mar. 16 2012) ("the Wrongful Death Act covers injuries suffered by the next of kin because of and after the decedent's death, whereas the Survival Act allows for the recovery of damages for injury sustained by the deceased up to the time of death") (citing *Wyness v. Armstrong World Industries*, 131 Ill. 2d 403, 410 (1989)). Ms. Marshbanks does not oppose Defendants' motion to strike paragraph 77. The Court, therefore, grants the Defendants' motion as to this paragraph.

## VII.    Punitive Damages against the City

Defendants also seek to strike Ms. Marshbanks' claim for punitive damages against the City because Section 2-102 of the Illinois Tort Immunity Act prohibits such damages. (Mot. at 13.) Ms. Marshbanks does not contest the Defendants' apt application of the Illinois Tort

Immunity Act, but instead seeks to file an amended complaint to address this issue. *See Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 101 S. Ct. 2748, 69 L. Ed. 2d 616 (1981) (municipalities are not subject to punitive damages in suits under 42 U.S.C. § 1983); *Robinson v. City of Harvey, Ill.*, 617 F.3d 915, 916 (7th Cir. 2010); *Thompson v. Village of Monee,* No. 12 C 5020, 2013 WL 3337801, at *26 (N.D. Ill. July 1, 2013). Also, as discussed above, because Ms. Marshbanks has named the City as a defendant, claims against the City of Calumet officers in their official capacities are redundant and unnecessary. *See Klebanowski v. Sheahan,* 540 F.3d 633, 637 (7th Cir. 2008) ("[a]n official capacity suit is tantamount to a claim against the government entity itself.") Ms. Marshbanks cannot recover punitive damages, therefore, by suing these officers in their official capacity. The Court dismisses all claims against the officers in their official capacities.

## CONCLUSION

For the foregoing reasons, the Court grants in part the Defendants' motion to dismiss. The Court dismisses Counts I, III, IV, V, VI, VII, and VIII without prejudice. The Court also grants the Defendants' motion to strike as to paragraph 77 and Ms. Marshbanks' claim for punitive damages against the City. The Court also dismisses all claims against the officers in their official capacities.

**DATED: September 10, 2013**

                                                                             **ENTERED**

                                                                             **AMY J. ST. EVE**
                                                                             **United States District Court Judge**