# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| ANTHANETTE MARSHBANKS, | ) | |
| as Special Administrator of the | ) | |
| Estate of Archie Lee Chambers, Jr. | ) | |
| | ) | Case No. 13cv2978 |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| CITY OF CALUMET CITY; OFFICER | ) | Judge Amy J. St. Eve |
| LUCIOUS, STAR NO. 230, | ) | |
| OFFICER GERSTNER, STAR NO. 188, | ) | |
| OFFICER FISHER, STAR NO. 168, | ) | |
| OFFICER LASTER, STAR NO. 206, | ) | |
| OFFICER T. MOTTL, STAR NO. 214, | ) | |
| OFFICER HINTZ, STAR, NO. 148, | ) | |
| LT. DIFIORI, STAR NO. 150, | ) | |
| OFFICER BLAND, STAR NO. 234, | ) | |
| CHIEF EDWARD GILMORE, Star No. 227 | ) | |
| and UNKNOWN OFFICERS, | ) | |
| | ) | |
| Defendants. | ) | |

### PLAINTIFF'S RESPONSE TO DEFENDANT CITY OF CALUMET CITY'S MOTION TO BIFURCATE *MONELL* CLAIM AND POSTPONE TRIAL AND DISCOVERY ON THOSE CLAIMS

Now comes Plaintiff, ANTHANETTE MARSHBANKS, as Special Administrator of the Estate of Archie Lee Chambers, Jr., by and through her attorneys, PETERSON, JOHNSON & MURRAY CHICAGO LLC, and for her Response to Defendant City of Calumet City's Motion to Bifurcate *Monell* Claim and to Postpone Trial and Discovery on those Claims (Doc. N. 174), states as follows:

### INTRODUCTION

Defendant City of Calumet City seeks to bifurcate the *Monell* claim for the purposes of discovery and trial. However, the motion seeks to bifurcate more than just *Monell* discovery. Defendant surreptitiously inserts arguments to preclude discovery that may include "possible

evidence pertaining to the Defendant Officers' (and their families') personal life." (Doc. No. 174, p.11). Defendant further contends "[e]vidence of the Defendant Officers' personal life and evidence of the City's alleged systemic deficiencies in it policies or customs, and evidence of unrelated incidents and lawsuits has no bearing" on the Plaintiff's claims. *Id*. This argument raises a red flag and begs the question: what discovery regarding the Defendant Officers has been withheld to date? Discovery related to the officers and other misconduct may be admissible, but without an explanation or description of the discovery, Plaintiff can only speculate as to the nature of the prejudicial evidence or why it was not produced previously.

Next, arguing judicial economy or that multiple witnesses would have to be called is a non-starter. There have already been over 20 depositions in this matter, some of which have demonstrated that Defendants did not adhere to the written General Orders that concern the use of force and the use of lethal force. As such, the additional discovery regarding the other incidents will not be as cumbersome as Defendants would have this Court believe.

Further, this case presents the possibility that multiple officers fired a gun and they will argue that it was not their shots that killed Decedent. For example, Officer Gerstner testified that Decedent did not appear to have been hit when Officer Gerstner fired and yet he denied, in a request to admit facts, that his bullet did not strike Decedent. (see Deposition of Officer Gerstner attached hereto as Exhibit 1, pp. 59 and 108 and see Officer Gerstner's Resp. to Plaintiff's Req. to Admit attached hereto as Exhibit 2, nos 6 and 7). Although Plaintiff believes that the .40 caliber bullet recovered from Decedent's spinal canal was fired by Officer Laster, Defendants may argue that there is not sufficient evidence to connect the death with any one officer. In that case, a jury could find that the policies, practices and customs were the moving force behind a

constitutional violation, although they cannot conclude which officer shot and killed Archie after he dropped his weapon.

Lastly, it is premature to argue that the *Monell* discovery would prejudice the individual Defendant Officers. This argument presumes that the discovery will reveal a pattern of unconstitutional acts. Plaintiff has already propounded written *Monell* discovery but Defendant does not argue that it is improper or overly broad, but rather, Defendant makes arguments in the abstract and in generalities regarding the propriety of conducting *Monell* discovery and the impact of the same on the officers. As such, Plaintiff should be able to conduct specific *Monell* discovery and this motion should be denied.

## I. The City of Calumet City's argument that resources will be saved is disingenuous.

In the wake of filing a summary judgment in a matter that was replete with officer testimony that Archie did not need to be shot, the City is now concerned with conserving resources and curtailing attorneys' fees. Ironically, Defendant had upwards of five attorneys at the depositions this matter; however, now judicial resources and attorneys' fees are the central theme in Defendant's motion. Defendant does not state with any specificity how burdensome the *Monell* discovery would be. Plaintiff has already indicated that the *Monell* discovery could be conducted with the use of 30(b)(6) witnesses and any individual providing training, thereby defeating Defendant's arguments that *Monell* discovery would require "the City … to call to testify its past and present Chiefs of Police, members of the Board of Police and Fire Commissioners, possibly the Mayor, and any person that has given training sessions on the use of force." (Doc. No. 174, p. 9).

On February 3, 2015, this Court held a status hearing following the denial of summary judgment. During that hearing there was no objection by counsel for the City related to *Monell*

discovery. The Court ordered the parties to complete the written *Monell* discovery by April 7, 2015. (Doc. No. 171) *Monell* written discovery was then issued by Plaintiff on February 9, 2015. (See Cert. of Service, Doc. No. 172). On February 10, 2015, this Court set a *Monell* discovery cutoff of May 29, 2015. (Doc. No. 173).

The schedule set by this Court will not delay the proceedings, nor will it waste the resources of the parties. Further, the parties are to conduct expert discovery and complete the same by August. Thus, there will not be a delay. It has been held that where a motion to stay discovery is unlikely to significantly expedite the litigation, and may actually slow it down, the court will— and in this case did—decline to stay discovery. *See Builders Ass'n of Greater Chi. v. City of Chi.,* 170 F.R.D. 435, 437 (N.D.Ill.1996).

Additionally, Defendant argues hyperbole because it has not identified the volume of discovery that would be required based upon the discovery requests. Notably, some of the discovery sought references to the individual officers and their potential bad acts (based upon the City's Motion). As such that documentation should be forthcoming and not withheld as *Monell* discovery.

Lastly, whether to bifurcate claims at trial is a matter within this Court's sound discretion. *See Treece v. Hochstetler,* 213 F.3d 360, 364-65 (7th Cir.2000). Defendants have put the cart before the horse because they have argued that the trial needs to be bifurcated because of prejudice to the officers, without identifying the nature of the prejudice. At a minimum, bifurcation of the trial based upon prejudice to the officers is not ripe for determination and that portion of the motion should be denied.

    **II.**    **Plaintiff could obtain a verdict under *Monell* without a finding of liability against a particular officer.**

Defendant argues that bifurcation is warranted because in excessive force cases we can readily ascertain the identity of the officer who used the excessive force and that "if Marshbanks fails to prove that Defendant Officers violated Chambers' constitutional rights, then she will not be able to prove that the City is liable for any alleged constitutional deprivation." (Doc. No. 174, pp. 7-8). Plaintiff would agree that ordinarily with that proposition, but here there were three officers who discharged their weapons. Plaintiff believes she will be able to present credible evidence that the fatal shot was fired by Officer Laster because he was the only officer using a .40 caliber gun and the projectile recovered from Decedent's body was from a .40 caliber firearm. However, it is entirely possible that Defendants may argue to a trier of fact that Plaintiff failed to prove by a preponderance of the evidence that a particular officer used excessive force.

For example, Officer Gerstner testified that he fired one shot at Decedent when he was a couple of feet from the fence and that Decedent's body did not react in a manner that would indicate Decedent was hit by the bullet. (Ex. 1, Dep. of Officer Gerstner, p. 108) However, when asked to admit that the one shot fired by Officer Gerstner did not strike Decedent, Gerstner objected and asserted a lack of knowledge. (Ex. 2, Officer Gerstner's Resp. to Plaintiff's Req. to Admit).

It is clear that Defendants want to have it both ways. They want to say that they do not know who shot Archie and that if the officers were not found liable that the City would not be liable. This is precisely the case where there are two gunshot wounds out of the three total that cannot be traced to an officer and Defendants may argue that the .40 caliber bullet did not come from Officer Laster. Under those circumstances, it is possible to have a scenario that was addressed in *Thomas v. Cook County Sheriff's Department*, 604 F.3d 293, 305 (7th Cir.2009)(which held that a municipality may be held liable under *Monell* even when its officers

are not, unless such a finding would create an inconsistent verdict). If Defendants are only going to argue that Officer Laster was justified in shooting Decedent off the fence when he was unarmed, then there is no issue, but if Defendants are going to argue that Plaintiff failed to identify the shooting officer, then the precedent in *Thomas* controls and *Monell* discovery should be allowed.

Further, this Court denied the application of Qualified Immunity, but if the individual Defendants are going to continue to argue, as they did during summary judgment, that they are entitled to qualified immunity, then that situation could allow a jury to find a Constitutional violation, but prevent liability against the officers. Plaintiff believes the assertion of qualified immunity is meritless under the circumstances, but if that defense is not waived by the officers in writing, bifurcation should not be allowed.

First, there is at least one scenario where Plaintiff could lose her claims against the individual Defendants, but may still be able to prevail against the municipality under *Monell*. It is well established that individual public employees are entitled, where applicable, to the defense of qualified immunity, *see generally Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), but municipalities are not. *Owen v. City of Independence,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980). Thus, if Plaintiff loses her claim against the individual officer based on qualified immunity, she can still recover against Calumet City if she can prove a constitutional deprivation caused by Calumet City's policy or custom was the moving force behind the constitutional violation. Until such time as the defense of qualified immunity is waived by the individual officers there is a possibility, albeit small, that qualified immunity could shield the individual Defendants from liability. The Court found that there was an issue of

fact, however, special interrogatories posed to the jury could eliminate the existence of an issue of fact on this issue. Therefore, the *Monell* claims should not be bifurcated or stayed.

### III. A trier of fact could find that the policies, practices, and customs were the moving force behind the officers' conduct during the shooting of Decedent.

The Supreme Court has found that there can be liability for failure to train against a municipality for a shooting even if there is a single inappropriate shooting. In *City of Canton v. Harris,* the Supreme Court held that "inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." 489 U.S. at 388, 109 S.Ct. at 1204. The Court stated: "[O]nly where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *Id.* at 389, 109 S.Ct. at 1205. The Court elaborated:

> [I]t may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.

*Id.* at 390, 109 S.Ct. at 1205.

Currently, there is a record of multiple shootings within Calumet City by police officers. Since 2009 there have been more than 5 shootings of suspects/arrestees. Only a couple of months before the shooting of Decedent, Calumet City officers shot a teenager with mental disabilities based on alleged self-defense.

Officer Mottl testified that he last went to use of force training three years prior to his deposition. (Ex. 3, Dep. of Officer Mottl., p. 20). Even worse, when Calumet City provides simulations to instruct the officers on the use of force, the training only provides situations where

the officers are supposed to shoot. (Ex. 4, Dep. of Officer Fisher, pp. 29-34). As the Court may see, Plaintiff's request for *Monell* discovery is not a fishing expedition. There have been some facts developed to demonstrate that the training provided is non-existent or improper.

Additionally, the practices in this case deviated from the written General Orders. For example, any officer who uses lethal force is required by the General Order to prepare a report, without exception. Here, the only officer that prepared a report was Officer Mottl, while the three officers who discharged their weapons did not. This deviation from the written rules was condoned by the policy makers. Further, the City is to convene a Force Review Board to hear the evidence and levy administrative sanctions for failure to adhere to the General Orders or the use of improper force. Again, that requirement was disregarded. These actions allow the officers to act without concern of any meaningful discipline or remedial training, which is clearly needed given the number of police officer involve shootings in Calumet City. The practices of the City were the moving force behind the unwarranted shooting of Decedent.

Defendant's assertion that "bifurcation of the *Monell* claims and postponement of the trial related to these claims best serve the interests identified in Rule 42(b) of avoidance of prejudice, convenience, expedition, and economy" is simply incorrect. Defendants have not concerned themselves with preserving resources or economy to date. This case has involved multiple motions to compel, repeated discovery disputes, and a dispositive motion practice with a record replete with adverse testimony against the officers, most of which came from the other defendant officers. Expedition and economy were not a concern before and the three months allotted for *Monell* discovery is almost the same amount of time that the filing of the dispositive motions were extended. Ultimately, the additional expense and slight delay in proceeding to trial is minimal given the nature of this litigation.

Finally, there are other, non-economic benefits that one can obtain from suing a municipality that are less likely when the plaintiff pursues only the individual officer. Deterrence of future misconduct is a proper object of our system of tort liability, *see, e.g., City of Monterey v. Del Monte Dunes at Monterey, Ltd.,* 526 U.S. 687, 727, 119 S.Ct. 1624, 143 L.Ed.2d 882 (1999), and § 1983 claims are a form of tort liability. *See, e.g., Heck v. Humphrey,* 512 U.S. 477, 483, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). Depending on the size of the verdict and the size of the municipality, as well as other factors, a judgment against a police officer, even if it is paid for by the City pursuant to the stipulation, is less likely to prompt the City to act to prevent future violations than if the judgment names Calumet City and its policy makers as responsible based on its policies and customs. See *Medina v. City of Chicago*, 100 F. Supp. 2d 893, 896-897 (N.D. Ill. 2000)(denying Defendant's motion for bifurcation and a stay of *Monell* discovery).

The *Medina* decision is not an outlier. There are other cases from this district that have rejected a stay of *Monell* discovery. See *e.g*. *Martinez v. Cook County, et al.*, 11 CV 1794 (N.D. Ill. Oct. 4, 2011); *Warren v. Dart*, et al., 09 CV 3512 (N.D. Ill. May 22, 2012)(denying the motion to bifurcate where the plaintiff alleged "a widespread practice of generally violating inmates' rights and failing to adequately punish, discipline, supervise, and control officers"). Just as in *Warren*, there is ample evidence, not only from the shooting of Decedent, but the multiple other shootings known to date back to 2009, that Calumet City fails to supervise, control, or discipline its officers. Moreover, just as in *Warren*, this *Monell* discovery should not involve extensive document production and only a few depositions of 30(b)(6) deponents. Thus, these realities weigh in favor of denial of this motion.

**IV.**     **The stipulation offered by the City is deficient and Plaintiff can obtain recovery under the *Monell* claim that it could not with just a case against the officers because of the Tort Immunity Act.**

Defendant's Stipulation To Entry of Judgment is deficient for two reasons. First, it does not require indemnifications of attorneys' fees under 42 U.S.C. § 1988 and it is not irrevocable. (Doc. No. 37-1)Specifically, the Stipulation states,

> The City retains its right to move to alter or amend any judgment, move for judgment as a matter of law reversing such judgment, appeal, or seek any other post-trial relief from such judgment based on any grounds not inconsistent with the Federal Rules of Civil Procedure and the Federal Rules of Appellate Procedure.

*Id*. at 2. Plaintiff understands that there may be a need to preserve post-trial issues and seek to amend or alter the judgment; however, the City should not be allowed to seek to amend or alter any judgment against the City that is the subject of this Stipulation, i.e. the judgment entered on the *Monell* claims. As such, the Stipulation, if entered, must be irrevocable and be excluded from any post-trial or post-judgment motions. Otherwise, the Stipulation is illusory as written.

Next, the indemnification obligation imposed on the City pursuant to 745 ILCS 10/9-102 does not extend to attorneys' fees, citing *Yang v. City of Chicago,* 195 Ill. 2d 96 (2001). See also 745 ILCS 10/9-102 (stating that "[a] local public entity is empowered and directed to pay any tort judgment or settlement for compensatory damages (and may pay any associated attorney's fees and costs) for which it or an employee while acting within the scope of his employment is liable in the manner provided in this Article"). According to Defendants, under Illinois law, the City is *authorized* in its discretion to pay attorneys' fees and costs, but is not *required* to do so.

*Yang* indeed states that a "tort judgment" as contemplated by the Tort Immunity Act does not encompass attorneys' fees against municipalities within its definition of compensatory damages. *Yang,* 195 Ill. 2d 96. The Seventh Circuit likewise recently concluded that 745 ILCS 10/9-102 (governing a public entity's payment of attorney fees and costs) was permissive, not mandatory. See *Winston v. O'Brien,* ___ F.3d ___, 2014 WL 5786953, at *4-5 (7th Cir. Nov. 7,

2014) ("In sum, the plain language of § 9-102 gives the City discretion in deciding to indemnify attorney's fees associated with an award of compensatory damages").

Therefore, the stipulation offered by the City does not encompass all of the damages sought by Plaintiff and the *Monell* claim offers additional claims to relief that is not provided for with the claims against the individual officers.

**V.     Defendant's motion seeks to restrict discovery in areas that are otherwise allowed.**

Defendant seeks to preclude "possible evidence pertaining to the Defendant Officers' (and their families') personal life." (Doc. No. 174, p. 11). Defendants have not identified the potential prejudicial evidence for this Court in its motion, which leads us to only guess as to what the prejudicial evidence may be. Defendants appear to be foreclosing all discovery related to the *Monell* claims, regardless if the materials are discoverable/admissible vis-à-vis other federal rules of evidence. Moreover, Defendant's argument about the prejudice of such evidence at trial are premature given the fact that the other incidents of misconduct have not been explored. For example, the other incidents may be admissible under FRE 404(b), impeachment evidence, acts of dishonesty, or evidence related to punitive damages arguments against the officers. Thus, Defendants should not be allowed to characterize this discovery related to the officers as "*Monell*" discovery simply because it may involve other incidents.

**VI.    *Swanigan v. City of Chicago***

This Court's reference to the case of *Swanigan v. City of Chicago*, Case No. 12-1261 (7th Cir. 2015) was appropriate given the nature of those claims and the issues at bar here. Although we are at a different procedural posture, that decision provides some very important legal findings. Defendant is accurate that Plaintiff does not currently have a claim for injunctive relief, but given the holding in *Swanigan*, there is nothing to prohibit the amendment now, following

*Monell* discovery, or even post-trial. The *Swanigan* decision makes two things clear. First the stipulation offered by Defendant did not cover all of the relief sought by Plaintiff, which is also the case here. Second, Plaintiff had a right to amend the complaint to add injunctive relief claims. *Id*. at 21. Therefore, this precedent allows for the addition of injunctive relief and given the fact that there has been at least one police involved shooting after this incident, injunctive relief is warranted. If the matter could not be resolved via settlement, Plaintiff will seek leave to amend the Complaint to seek equitable relief, including mandatory injunctive relief. Therefore, *Swanigan* supports the denial of this motion, as the Court alluded to at the February 10, 2015 status hearing.

## **CONCLUSION**

Plaintiff, in an attempt to get to the merits of her claims, should be allowed to proceed with *Monell* discovery. Plaintiff can collect additional recovery that she could not otherwise with just the claims against the individual defendants, which alone is enough to allow these claims to go forward. Defendant has not established their burden to stay *Monell* discovery. It has not even pointed to the quantity of documents needed to complete *Monell* discovery or even the number of incidents that may be involved. As such, it cannot demonstrate there is an undue burden, substantial expenditure of resources, or a significant delay in bringing this matter to trial and this motion should be denied in its entirety.

WHEREFORE Plaintiff respectfully requests that this Court deny Defendant's Motion to bifurcate and stay *Monell* discovery and for any other relief that this Court deems necessary and just.

Respectfully Submitted,

ANTHANETTE MARSHBANKS, as Special Administrator of the Estate of Archie Lee Chambers, Jr.

By: /s/Dominick L. Lanzito
      Attorney for Plaintiff

Dominick L. Lanzito
Kevin M. Casey
PETERSON, JOHNSON & MURRAY - CHICAGO LLC
Chicago, IL 60606
Telephone: 312/782-7150
Fax: 312/896-9318
dlanzito@pjmlaw.com