FranIN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ANTHANETTE MARSHBANKS, ) | | |
| as Special Administrator of the Estate ) | | |
| of Archie Lee Chambers, Jr., ) | | |
| ) | | |
| Plaintiff, ) | Case No. 13 C 2978 | |
| ) | | |
| v. ) | | |
| ) | | |
| CITY OF CALUMET CITY, et al., ) | | |
| ) | | |
| Defendants. ) | | |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

On January 17, 2014, Plaintiff Anthanette Marshbanks, as the Special Administrator of the Estate of Archie Lee Chambers, Jr. ("Chambers"), brought an eight-count Second Amended Complaint against Defendants City of Calumet City ("Calumet City") and individual Calumet City police officers alleging the deprivation of Chambers' constitutional rights under 42 U.S.C. § 1983, as well as state law claims. *See* 28 U.S.C. §§ 1331, 1367(a). On January 20, 2015, the Court denied Defendants' summary judgment motion brought pursuant to Federal Rule of Civil Procedure 56(a). One of Plaintiff's remaining claims is a Fourth Amendment excessive force claim against Calumet City pursuant to *Monell v. Department of Social Servs.*, 436 U.S. 658, 690–91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Before the Court is Calumet City's motion to bifurcate the *Monell* claim from the other claims in this lawsuit for discovery and trial purposes.[1]

---

[1] Earlier in these proceedings, the parties agreed to bifurcate *Monell*-related discovery. (R. 60, 12/5/13, Order, at 3.)

*See* Fed. R. Civ. P. 42(b). For the following reasons, the Court, in its discretion, denies Calumet City's motion.

## LEGAL STANDARD

Rule 42(b) provides that "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Fed.R.Civ.P. 42(b); *see also Chlopek v. Federal Ins. Co.,* 499 F.3d 692, 700 (7th Cir. 2007). When determining whether to bifurcate discovery or trial, the Court "must balance considerations of convenience, economy, expedition, and prejudice, depending on the peculiar facts and circumstances of each case." *Houskins v. Sheahan*, 549 F.3d 480, 495 (7th Cir. 2008). Whether to bifurcate trial is a decision committed to the district court's sound discretion and made on a case-by-case basis. *See Volkman v. Ryker*, 736 F.3d. 1084, 1088-89 (7th Cir. 2013); *Krocka v. City of Chicago,* 203 F.3d 507, 516 (7th Cir. 2000).

## BACKGROUND

### I. Summary Judgment Facts

Marshbanks is the mother of the decedent, Chambers, and the Administrator of his Estate. Defendant Calumet City is an Illinois municipal corporation under the laws of the State of Illinois. Defendant Officers Brian Gerstner, Joseph Fisher, Thomas Mottl, James Lucius, Steven Hintz, and Lamar Laster were police officers for the Calumet City Police Department during the relevant time period.

On the evening of April 20, 2012, the Undisputed Car Club (the "Club") was hosting a party at the What's Up Bar and Grill on Torrence Avenue in Calumet City. The Club, of which

Chambers was a member, is an organization of individuals who own and drive Chevy Impala or Pontiac Grand Prix automobiles. At approximately 1:48 a.m. on April 21, 2012, the Calumet City Police Department's dispatch center received multiple 911 calls of shots being fired at the What's Up Bar and Grill. The police dispatcher announced to the officers on duty that shots were fired and that a subject was down. The dispatcher did not give Defendant Officers a physical description of the shooter(s) during the dispatch call.

When it was announced that shots had been fired, Club members Geno Powers and Chambers were inside the What's Up Bar and Grill, and, upon hearing the news, Powers, Chambers, and several other individuals ran outside. After exiting the bar, Powers and Chambers went to the south side of the parking lot where they saw two Club members, Willie White and Michael Harris, lying on the ground.

The Calumet City Police Department is about four blocks from the What's Up Bar and Grill. Defendant Officers, who were all nearby, took approximately one to two minutes to get to the scene after receiving the dispatcher's call. When Defendant Officers arrived there were at least 150 people in the parking lot. When Defendant Officers reached the parking lot, they tried to control the crowd. People in the crowd pointed to the two injured men on the ground, namely, Harris and White. Defendant Officer Gerstner then approached Harris and informed him that an ambulance was on the way. At that time, Harris did not tell Defendant Officers who had shot him. Meanwhile, White was unconscious. There is evidence in the record that an individual at the scene of the shooting told Defendant Officer Lucius that the shooter(s) left the scene in a gray car traveling south on Torrence Avenue.

Chambers then emerged from between two parked vehicles and fired two or three shots in the air in the presence of Defendant Officers. The parties dispute whether Defendant Officers gave Chambers any commands after Chambers fired the shots in the air. Also, the parties dispute whether Chambers dropped his gun at that time, although two Defendant Officers testified that Chambers dropped his gun after certain Defendant Officers discharged their weapons at him. The Defendant Officers who saw Chambers drop his gun did not tell the other officers to stop shooting.

Thereafter, Chambers ran to a nearby fence on the south side of the parking lot that was approximately six feet tall, grabbed the top of the fence with both hands, and pulled himself over. Chambers did not have a gun in his hand when he climbed the fence and at least one Defendant Officer fired at Chambers when he was at the top of the fence. Chambers dropped straight to the ground on the other side of the fence. Defendant Officers went to the other side of the fence, and, when they arrived they discovered that Chambers was dead. No gun was found on his body. Also, there is evidence in the record that Chambers did not shoot at the police. Later, it was determined that Defendant Officers fired a total of 11-13 times at Chambers, including after he dropped his gun, and that Chambers suffered three gunshot wounds.

## II.  Monell Allegations

In Count II of the Second Amended Complaint, Plaintiff alleges that the Calumet City Police Department's policies and practices proximately caused Defendant Officers' unreasonable use of lethal force. (R. 77, Sec. Am. Compl. ¶ 51.) Plaintiff further alleges that "[t]hese widespread practices are allowed to flourish because the City directly encourages, and is thereby the moving force behind the very type of misconduct at issue by failing to adequately train,

4

supervise, and control its officers, and by failing to adequately punish and discipline prior instances of similar misconduct, thus directly encouraging future abuses." (*Id*. ¶ 52.) In addition, Plaintiff asserts that these widespread practices constitute a policy where "misconduct is able to exist and thrive because final governmental policymakers with authority over the same exhibited deliberate indifference to the problem, thereby effectively ratifying it." (*Id*. ¶ 53.) Plaintiff contends that "Calumet City and its policy makers, including the Chief of Police, repeatedly disregard the explicit reporting requirements of the Use of Force General Order and it fails to convene a Use of Force Review Committee to review the reasonableness of an officer's use of lethal force." (*Id.* ¶ 54.)

From these allegations, Plaintiff is basing Calumet City's liability on the theory that the City failed to properly train, supervise, review, and discipline its police officers in the use of excessive and deadly force. *See Connick v. Thompson,* ___ U.S. ___, 131 S.Ct. 1350, 1359, 179 L.Ed.2d 417 (2011) ("In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983."); *see also Canton v. Harris,* 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989); *Sornberger v. City of Knoxville, Ill.,* 434 F.3d 1006, 1029-30 (7th Cir. 2006).

## ANALYSIS

Citing to *Los Angeles v. Heller,* 475 U.S. 796, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986) (per curiam), Calumet City argues that to establish *Monell* liability under the circumstances, Plaintiff must prove not only that Defendant Officers deprived Chambers of his Fourth Amendment right against unreasonable searches and seizures, but also that the City's policies or

5

customs were the moving force behind the alleged Fourth Amendment violations. Accordingly, Calumet City maintains that because municipal liability is contingent on the individual officers' liability, the Court should allow the parties to address the claims against the individual officers first. In *Heller,* the Supreme Court determined that a municipality could not be held liable for constitutional violations based on its police officer's use of excessive force after the jury found that the individual officer did not inflict any constitutional harm–in the absence of an asserted affirmative defense, such as qualified immunity. *Id.* at 798-99. In particular, the *Heller* Court held that, under the circumstances, "[i]f a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point." *Id*. at 799.

In *Thomas v. Cook County Sheriff's Dep't,* 604 F.3d 293, 305 (7th Cir. 2010), the Seventh Circuit rejected the argument that *Heller* requires individual officer liability before a municipality can *ever* be held liable for under *Monell*. Instead, the Seventh Circuit construed the *Heller* holding more narrowly, namely, "a municipality can be held liable under *Monell*, even when its officers are not, unless such a finding would create an inconsistent verdict." *Id.*; *see also Swanigan v. City of Chicago,* 775 F.3d 953, 962 (7th Cir. 2015). In *Thomas*, the decedent was a pre-trial detainee housed in the Cook County Department of Corrections whose mother brought a Fourteenth Amendment deliberate indifference claim based on defendants' failure to respond to the decedent's serious medical needs resulting in his death. *See id*. at 297. After considering these circumstances, the Seventh Circuit concluded that Cook County's policy was the moving force behind the constitutional deprivation–independent from the individual correctional officers' conduct–based on the County's well-documented breakdowns in its

6

policies for retrieving pre-trial detainees' medical requests. *Id.* at 305. In determining whether a municipality's liability is dependent on individual officers' conduct, the *Thomas* decision directs courts to look to certain factors, including "the nature of the constitutional violation, the theory of municipal liability, and the defenses set forth." *Id.*

Turning to these factors, the nature of the constitutional violation at issue is a Fourth Amendment excessive force claim and Plaintiff alleges that Calumet City is liable due to its failure to properly train, supervise, review, and discipline its police officers in the use of excessive and deadly force. Under these circumstances, Calumet City argues that "if Marshbanks fails to prove that Defendant Officers violated Chambers' constitutional rights, then she will not be able to prove that the City is liable for any alleged constitutional deprivation." (R. 174, Opening Mem., at 8.)

In response, Plaintiff states that she would "ordinarily" agree with this proposition, but explains:

> [H]ere there were three officers who discharged their weapons. Plaintiff believes she will be able to present credible evidence that the fatal shot was fired by Officer Laster because he was the only officer using a .40 caliber gun and the projectile recovered from Decedent's body was from a .40 caliber firearm. However, it is entirely possible that Defendants may argue to a trier of fact that Plaintiff failed to prove by a preponderance of the evidence that a particular officer used excessive force.
>
> For example, Officer Gerstner testified that he fired one shot at Decedent when he was a couple of feet from the fence and that Decedent's body did not react in a manner that would indicate Decedent was hit by the bullet. However, when asked to admit that the one shot fired by Officer Gerstner did not strike Decedent, Gerstner objected and asserted a lack of knowledge.
>
> It is clear that Defendants want to have it both ways. They want to say that they do not know who shot Archie [Chambers] and that if the officers were not found liable that the City would not be liable. This is precisely the case where there are two gunshot wounds out of the three total that cannot be traced to an

> officer and Defendants may argue that the .40 caliber bullet did not come from Officer Laster. Under those circumstances, it is possible to have a scenario that was addressed in *Thomas v. Cook County Sheriff's Department*, 604 F.3d 293, 305 (7th Cir. 2009) (which held that a municipality may be held liable under *Monell* even when its officers are not, unless such a finding would create an inconsistent verdict). If Defendants are only going to argue that Officer Laster was justified in shooting Decedent off the fence when he was unarmed, then there is no issue, but if Defendants are going to argue that Plaintiff failed to identify the shooting officer, then the precedent in *Thomas* controls and *Monell* discovery should be allowed.

(R. 176, Resp. Brief, at 5-6.) (internal citations to the record omitted).

Calumet City does not meaningfully respond to Plaintiff's argument in its reply brief, but merely reiterates the arguments made in its opening memorandum. Calumet City, for example, does not deny that its theory of the case is that Plaintiff cannot prove who shot Chambers, therefore, no one is liable for the deprivation of his Fourth Amendment rights. By not recognizing the nuance of Plaintiff's arguments, Calumet City has not sufficiently explained how the nature of the constitutional violation and the theory of municipal liability necessitate bifurcation under the circumstances.

Equally important, the individual Defendant Officers have asserted the affirmative defense of qualified immunity, which is significant to Court's analysis. As the *Thomas* decision explains–in the context of the facts in *Heller*–if the individual officer had asserted an affirmative defense, "the jury might have found that the plaintiff's constitutional rights were indeed violated, but that the officer could not be held liable" because in "that case, one can still argue that the City's policies caused the harm, even if the officer was not individually culpable." *Id.* at 304. The Seventh Circuit clarified that "[w]ithout any affirmative defenses, a verdict in favor of the officer necessarily meant that the jury did not believe the officer violated the plaintiff's constitutional rights" and because "the City's liability was based on the officer's actions, it too

8

was entitled to a verdict in its favor." *Id.* at 304-05.  Here, because the individual Defendant Officers have asserted the affirmative defense of qualified immunity, Plaintiff has shown the possibility that holding Calumet City liable would not create an inconsistent verdict with a jury finding that Defendant Officers are not liable.[2]

Turning to the Rule 42(b) considerations, Calumet City argues that bifurcation will conserve judicial resources, including the need for extensive *Monell* discovery.  As Plaintiff notes, however, the parties have conducted over twenty depositions in this matter, and, according to Plaintiff, some of deposition testimony reveals that certain Defendant Officers may not have adhered to the written general orders concerning the use of force and lethal force.  Indeed, Calumet City admits in its opening brief that the parties have already completed extensive fact discovery in this matter.  Furthermore, Plaintiff has indicated that *Monell* discovery could be conducted with the use of Rule 30(b)(6) witnesses and any witness who provides officer training.  Therefore, Calumet City's argument that *Monell* discovery would require the parties to depose past and present Chiefs of Police, members of the Board of Police and Fire Commissioners, and possibly Calumet City's Mayor, is unavailing.  Meanwhile, Plaintiff has propounded four interrogatories and numerous document requests related to *Monell* discovery.  After reviewing this written discovery, the Court finds that it is not overly burdensome despite Calumet City's arguments to the contrary.  Also, the parties are encouraged to work together during *Monell* discovery in the interests of curbing any burdensome tasks.

---

[2] Calumet City's argument based on Judge Lefkow's unpublished decision in *Readus v. Dercola,* No. 09 C 4063, 2012 WL 1533167 (N.D. Ill. May 1, 2012), is not persuasive because there is a possibility that Defendant Officers can establish the affirmative defense of qualified immunity under the unique circumstances of this case.  *See also Giles v. Ludwig,* No. 12 C 6746, 2013 WL 6512683, at *3 (N.D. Ill. Dec. 6, 2013).

In addition, Calumet City's judicial economy argument is not persuasive because under the circumstances, bifurcation would result in two trials that would most likely involve many of the same witnesses and evidence. *See* 9A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 2388 (3d Ed. 2008) ("The piecemeal trial of separate issues in a single lawsuit [] is not to be the usual course."). Finally, Calumet City's argument that the evidence against Calumet City will prejudice Defendant Officers is best cured by proper jury instructions and pre-trial evidentiary challenges. Accordingly, Calumet City has failed in its burden of demonstrating that the Rule 42(b) factors weigh in favor of bifurcation. *See Real v. Bunn-O-Matic Corp.*, 195 F.R.D. 618, 620 (N.D. Ill. 2000).

## CONCLUSION

For these reasons, the Court, in its discretion, denies Calumet City's motion to bifurcate Plaintiff's *Monell* claim from the other claims in this lawsuit for discovery and trial purposes.

**Dated:** March 16, 2015

**ENTERED**

**AMY J. ST. EVE**
**United States District Court Judge**